UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- x

PHYTO TECH CORP. d/b/a BLUE CALIFORNIA, and  :
CONAGEN INC., :
: 18-CV-06172 (JGK)
                  **Plaintiff,** :
:
v. :
:
GIVAUDAN SA :
:
                  **Defendants.** :
:
:

------------------------------------------------- x

**PHYTO TECH CORP. D/B/A BLUE CALIFORNIA, AND CONAGEN INC.'S
SUPPLEMENTAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING REASONABLE ROYALTY**

      Phyto Tech Corp. d/b/a Blue California ("Blue Cal') and Conagen Inc. ("Conagen") (collectively "Plaintiffs") respectfully submit the following supplemental findings of fact and conclusion of law to address sales data produced by Givaudan on May 6, 2022, and which support Plaintiffs' alternative request for a reasonable royalty.

      1.     Where misappropriation of trade secrets is found, but the calculation of lost profits cannot be calculated with reasonable certainty, the Court may award a reasonable royalty as an alternative damages remedy. *Vermont Microsystems, Inc. v. Autodesk, Inc*., 138 F.3d 449, 450 (2d Cir. 1998) ("[r]easonable royalty is a common form of award in [] trade secret [] cases."); *In re Avaya Inc*., No. 17-10089 (SMB), 2018 WL 1940381, at *6 (Bankr. S.D.N.Y. Apr. 23, 2018), *aff'd*, 602 B.R. 445 (S.D.N.Y. 2019); *LinkCo, Inc. v. Fujitsu Ltd*., 232 F. Supp. 2d 182, 186 (S.D.N.Y. 2002). The award of a reasonable royalty is authorized under both the

DTSA and Delaware law. See DTSA, 18 U.S.C. §1836(b)(3)(B)(ii) and Delaware Uniform Trade Secrets Act, 6 Del. C. § 2003(a).

    2.      The standard for determining a reasonable royalty is a flexible one, but courts commonly rely on the hypothetical negotiation approach, which constructs a negotiation over a hypothetical consensual license to the trade secret at the time of disclosure. Courts have considered the following factors in the analysis:

- (1) the resulting and foreseeable changes in the parties' competitive posture;
- (2) the prices past purchasers or licensees may have paid;
- (3) the total value of the secret to the plaintiff, including plaintiff's development costs and the importance of the secret to the plaintiff's business;
- (4) the nature and extent of the use the defendant intended for the secret;
- (5) whatever other unique factors in the particular case might have affected the parties' agreement, such as the ready availability of alternative processes.

*Dow Jones & Co. v. Real-Time Analysis & News, Ltd.*, No. 14 CIV. 131 JMF GWG, 2014 WL 4629967, at *6 (S.D.N.Y. Sept. 15, 2014); *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 187 n.7 (S.D.N.Y. 2002). In addition, the factfinder may also consider the factors identified in *Georgia–Pacific Corp. v. United States Plywood Corp.,* 318 F.Supp. 1116, 1120 (S.D.N.Y.1970) and which are commonly used to determine a reasonable royalty in patent cases. *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d at 187 n.7 (S.D.N.Y. 2002); *In re Avaya Inc.*, No. 17-10089 (SMB), 2018 WL 1940381, at *7 (Bankr. S.D.N.Y. Apr. 23, 2018), aff'd, 602 B.R. 445 (S.D.N.Y. 2019).

    3.      In a hypothetical negotiation at the time of misappropriation, in late 2017 or early 2018, Plaintiffs would have been unwilling to allow Givaudan to disclose its trade secrets to Gingko. The construct of the hypothetical negotiation nevertheless requires me to assume that the negotiation did take place and estimate what royalty would have been agreed to by the parties. The evidence shows that the Plaintiffs considered Gingko to be a vigorous competitor, which would have militated in favor of a high royalty under factors 1, 3 and 5. Factor 4 is

neutral.  Factor 2, the price of past licenses, is discussed below in connection with the royalty rate.

4.      The calculation of a reasonable royalty requires a determination as to the royalty base and the royalty rate.  With respect to the base, Givaudan recently produced ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5.      With respect to the rate, there is substantial evidence in the record of rates of 5%-10% for closely related transactions.  Givaudan and Blue Cal agreed to ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In addition, the ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ refers to a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮

6.      During a hypothetical negotiation, Conagen and Blue Cal would have pointed out the competitive harm that disclosure of information to Gingko would cause and why the rate should be higher than the 5%-10% norm reflected in actual negotiations over the provision of other flavorings.  Givaudan would have made various counterarguments.  On balance, it is reasonable to conclude that the parties would have compromised on a 10% rate on ethanolamine sales by Gingko to Givaudan.

7. As noted above, the recently produced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ Applying the 10% rate to ▮▮▮▮▮▮▮▮▮▮▮ generates a reasonable royalty of ▮▮▮▮. Of course, those sales would have continued into the future. I also note that the parties anticipated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Dated: Mary 23, 2022

Respectfully submitted,

By:   */s/ Martin J. Black*

Katherine A. Helm
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Tel. (212) 698-3500
khelm@dechert.com

Martin J. Black (pro hac vice)
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel. (215) 994-4000
martin.black@dechert.com

*Attorneys for Plaintiffs Phyto Tech Corp. and Conagen Inc.*